Isaac D. Zorea
Law Office of Isaac Derek Zorea
P.O. Box 210434
Anchorage, AK 99521
(907) 644-2802
(800) 536-1071 facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

RONALD LANE, )
 )
       Plaintiff, )
  vs. )
 )
UNITED ROAD SERVICES MIDWEST, )
 ) Case No. 3:17-cv-
       Defendant. )
_____ )

COMPLAINT FOR DAMAGES

COMES NOW Ronald Lane, the plaintiff above named, by and through his attorney, Isaac Derek Zorea, and complains as follows:

## I.   JURISDICTION

1.1.   At all relevant times, plaintiff, Ronald Lane, performed truck driving job duties for defendant operating out of Anchorage, Alaska, within the Third Judicial District, State of Alaska.

1.2.   At all relevant times, defendant, URS Midwest, Inc., has maintained significant business connections within the Third Judicial District, State of Alaska.

1.3.   Venue properly rests within the Third Judicial District, State of Alaska.

Page -1-

## II. FACTS

2.1.    For over fifteen years, plaintiff Ronald Lane had been employed by URS Midwest, Inc., working as a truck driver.

2.2.    Pursuant to the demands of his employer, Mr. Lane frequently worked a specific driving route for URS Midwest, which was the route from Anchorage, Alaska to Prudoe Bay, Alaska and back to Anchorage, Alaska, and other routes within Alaska.

2.3.    During the regular course of his employment as a truck driver for URS Midwest, Inc., Mr. Lane drove a vehicle with a gross vehicle weight greater than 80,000 lbs., and his travel principally remained within the State of Alaska.

2.4.    As compensation for his services, URS Midwest, Inc. paid Mr. Lane on a commission basis, paying to him twenty-seven percent of the amount charged to the customers. Mr. Lane's commission percentage remained the same without regard to the number of hours that he worked for URS Midwest, Inc., even though the hours he worked regularly exceeded 40 hours per week.

2.5.    During the course of his employment, URS Midwest, Inc. never required Mr. Lane to sign a written agreement explaining an alternative rate of overtime for his services, and at no time did Mr. Lane sign any written agreement describing any alternative methods by URS Midwest, Inc. for calculating its payment of overtime pay to him.

2.6.    During the course of his employment, URS Midwest, Inc. required Mr. Lane to perform job duties other than truck driving, and for these additional duties, URS Midwest, Inc. did not pay any overtime payments for these duties, even if these required hours of work exceeded 40 per week.

2.7. During the course of his employment, URS Midwest, Inc. never made any payments to Mr. Lane for those hours that he worked that exceeded 40 hours a week, or exceeded 8 hours a day, even though Mr. Lane worked overtime hours pursuing the clear expectations of his employer.

2.8. During the course of his employment, URS Midwest, Inc. established payment practices whereby it deducted compensation from Mr. Lane based on illegal cost transfers to Mr. Lane, which thereby lowered the weekly pay that he would otherwise be entitled to receive.

2.9. The clear language within the Alaska Wage and Hour Act and the Fair Labor Standards Act have made clear to any reasonable employer the necessity to either pay overtime payment to non-exempt employees, pursuant to the wage acts' requirement of time and a half, or that an alternative overtime payment system needed to be place in writing and signed by the employee.

2.10. During the last three years of his employment, Mr. Lane worked in excess of 1,000 hours of overtime work for URS Midwest, Inc., without receiving any overtime pay for these hours.

2.11. In November 1, 2017, while working for URS Midwest, Inc., Mr. Lane was subjected to carbon monoxide poisoning due to improper ventilation at his employer's work site and inadequate carbon monoxide warning alarms, for which URS received an OSHA violation. Because of this injury Mr. Lane was hospitalized and became inactive.

2.12. On or about February 7, 2017, Mr. Lane received medical clearance to return to work for URS Midwest, Inc., and he was already in Anchorage, Alaska, ready to drive his truck for URS Midwest.

2.13. When he was ready to work, on of about February 9, 2017, Mr. Lane spoke with URS Midwest, Inc.'s Regional Manager, Mike Martin, asking when he would be drive his truck load out of Anchorage. In response, the Mr. Martin asked Mr. Lane how many more years he planned on continuing work, telling him that if he quit he could receive a severance package from the company.

2.14. After being offered a severance package to quit, Mr. Lane stated that he still wanted to drive trucks. In response to Mr. Lane's statements that he wanted to continue working, URS Midwest Inc.'s operational manager told Mr. Lane that he was too old to drive, and they refused to employ him anymore.

2.15. On or about February 10, 2017, Mr. Lane filed an assignment of his overtime wage claim against URS Midwest, Inc. to State of Alaska, Department of Labor and Workforce Development. Mr. Lane requested that the State of Alaska, Department of Labor and Workforce Development relinquish his wage claim assignment, and in October 2017 the Department agreed to relinquish his wage claim assignment.

2.16. On or about March 1, 2017, Mr. Lane filed an Age Discrimination complaint with the Anchorage Equal Rights Commission, which was co-filed with the United States Equal Employment Opportunity Commission. As of the date of this complaint, has been investigated for more than 30 days, thereby exhausting the administrative requirements within the Age Discrimination in Employment Act.

/

/

/

## CAUSES OF ACTION

A. **VIOLATION OF FAIR LABOR STANDARDS ACT OF 1938, (29 USC § 201 ET SEQ.).**

    3.1.    Ronald Lane incorporates all the facts and allegations within the paragraphs listed above, 2.1 through 2.16.

    3.2.    Plaintiff Ronald Lane alleges that he worked overtime hours for his employer URS Midwest, Inc., by driving a truck for his employer between Anchorage, Alaska and Prudoe Bay, Alaska, and other points within Alaska, and performing other as needed duties, without receiving a payment of one and one half times his normal rate of pay.

    3.3.    Plaintiff Ronald Lane further alleges that he never was asked to sign, nor did he ever sign, any agreement with URS Midwest, Inc. that established any alternative method for paying and calculating overtime compensation for the hours that he worked.

    3.4.    Plaintiff Ronald Lane also alleges that URS Midwest, Inc. illegally withheld, and deducted, compensation that he had earned as part of his commission pay.

    3.5.    Plaintiff Ronald Lane alleges that URS Midwest, Inc.'s decision to ignore paying him overtime compensation, and/or its decision to ignore the requirement that any alternative methods of calculating overtime pay needed to be in writing, thereby making it appropriate that the statute of limitations on this suit be expanded, pursuant to 29 U.S.C. § 255, to three years.

    3.6.    Plaintiff Ronald Lane alleges that during that last three years he worked over 2,200 overtime hours, for which URS Midwest, Inc., deliberately refused to pay him overtime payments of one and one half his regular rate of pay. Demand is now made of the overtime pay for these hours worked.

Page -5-

Case 3:17-cv-00230-HRH   Document 1   Filed 10/30/17   Page 5 of 9

3.7. Further, Plaintiff Ronald Lane alleges that given the fact that URS Midwest, Inc., ought to have known that it needed to pay him overtime compensation for the hours that he spent working on his employer's behalf in excess of 8 hours per day and 40 hours per week, thereby making it appropriate that he be awarded liquidated damages on the full amount of his unpaid overtime hours.

3.8. Additionally, Plaintiff alleges that URS Midwest, Inc. unlawfully withheld wages owed to him, and otherwise maintained poor records concerning the wages owed to plaintiff. Demand is now made for all unpaid wages, and a return of all wages improperly withheld from plaintiff.

3.9. For URS Midwest Inc.'s violations of the Fair Labor Standards Act, Ronald Lane seeks all damages available under law, including actual attorney fees and prejudgment interest, and liquidated damages.

B. **VIOLATION OF ALASKA WAGE AND HOUR ACT (AS 23.10.050 ET SEQ.).**

3.10. Ronald Lane incorporates all the facts and allegations within the paragraphs listed above, 2.1 through 2.16, and alleges alternatively to the violation alleges in paragraphs 3.1 to 3.9 above, a violation under Alaska Wage and Hour Act.

3.11. Plaintiff Ronald Lane alleges that he worked overtime hours for his employer defendant URS Midwest, Inc., by truck driving, and doing other assigned duties, for his employer, without receiving a payment of one and one half times his normal rate of pay.

3.12. Plaintiff Ronald Lane further alleges that he never was asked to sign, nor did he ever sign, any agreement with URS Midwest, Inc. that established any alternative method for paying and calculating overtime compensation for the hours that he worked.

3.13. Plaintiff Ronald Lane also alleges that URS Midwest, Inc. illegally withheld, and deducted, compensation he had earned as part of his commission pay and otherwise maintained poor records concerning the wages owed to plaintiff. Demand is now made for all unpaid wages, and a return of all wages improperly withheld from plaintiff..

3.14. Plaintiff Ronald Lane alleges that during that last two years he worked over 1,400 hours, for which URS Midwest, Inc., deliberately refused to pay him overtime payments of one and one half his regular rate of pay. Demand is now made of the overtime pay for these hours worked.

3.15. Further, Plaintiff Ronald Lane alleges that given the fact that URS Midwest, Inc., ought to have known that it needed to pay him overtime compensation for the hours that he spent working on his employer's behalf in excess of 8 hours per day and 40 hours per week, thereby making it appropriate that he be awarded liquidated damages on the full amount of his unpaid overtime hours.

3.16. For URS Midwest, Inc.'s violations of the Alaska Wage and Hour Act, Ronald Lane seeks all damages available under law, including actual attorney fees and prejudgment interest, and liquidated damages.

C. **DISPARATE TREATMENT ON THE BASIS OF AGE IN VIOLATION OF 29 U.S.C. § 623.**

3.17. Ronald Lane incorporates all the facts and allegations within the paragraphs listed above, 2.1 through 2.16, and alleges that defendant, URS Midwest, Inc., violated the Age Discrimination in Employment Act.

3.18. Ronald Lane alleges that at all times relevant to this lawsuit he was over forty years of age, and was performing his job duties to the expectation of his employers, receiving no significant progressive discipline or verbal counseling.

3.22. Ronald Lane alleges that the operational manager for URS Midwest, Inc., specifically stated that he was too old to continue driving truck for his employer, despite having a valid commercial drivers license and having full medical clearances.

3.23. Plaintiff Ronald Lane alleges that despite satisfactorily performing all his employer's reasonable expectations, and having full medical clearance, he was terminated from his employment after being told that his age was a factor in his termination.

3.24. Ronald Lewis alleges that defendant URS Midwest, Inc. violated the Age Discrimination in Employment Act when it terminated his employment because of his age, being over 40 years old, and having been told that his age was a factor in his termination.

3.25. For URS Midwest Inc.'s violations of the Age Discrimination in Employment Act, Plaintiff seeks all damages available under law, specifically as outlined in 29 U.S.C. § 216(b), including back pay, future pay, actual attorney fees and prejudgment interest, and liquidated damages.

## JURY DEMAND

4.1. Plaintiff, Althea Thomas, hereby demands a trial by jury on all claims and issues for which she has a right for a jury to render judgment.

## PRAYER OF RELIEF

WHEREFORE, Plaintiff Ronald Lane, requests judgment against defendant URS Midwest, Inc., as follows:

1. Full and complete payment of all unpaid overtime compensation, and or illegally deducted payments, that URS Midwest, Inc., owes to Ronald Lane for the hours he worked truck driver for his employer and doing other required duties;

2. Payment by URS Midwest, Inc., to Ronald Lane of all penalties permitted against it, specifically pursuant to 29 U.S.C. § 216(b), and/or AS 23.05.140(d), but additionally any penalties and/or liquidated damages permitted under Federal or Alaska law.

3. Full and complete payment of all back wages, future wages, prejudgment interest, liquidated damages, and punitive damages caused when URS Midwest, Inc., retaliated against and/or treated in a disparate manner, Ronald Lane because of his Age, in violation of the Age Discrimination in Employment Act within an amount within the jurisdictional limit of this court, with an exact amount to be proven at trial

4. Actual reasonable attorney fees, pursuant to the Federal Fair Labor Standards Act, Alaska's Wage and Hour Act, or the Age Discrimination in Employment Act, and all permitted prejudgment interests on the unpaid wages.

4. Plaintiff Ronald Lane further seeks such other relief as the court may deem just and proper based on the egregious nature of Defendants' conduct.

Dated this 24th day of October 2017.

S/ Isaac Zorea
Law Offices of Isaac D Zorea
P.O. Box 210434
Anchorage, AK 99521
Telephone: (907) 830-1385
Facsimile: (800) 536-1071
E-mail: Eyedz@gci.net